## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**CHRISTINE O'KEEFE,**
**Individually and as Administrator of the**
**ESTATE OF CYNTHIA FISCHER, deceased,**

      **Plaintiff,**

                             **Civil Action No. 2:22-cv-1178**

**v.**

                             **(The Honorable Judge Arthur J. Schwab)**


**RUSTIC RAVINES, LLC, a West Virginia**
**Limited liability company; PREMIER**
**POWERSPORTS RENTAL, LLC, a Kentucky**
**limited liability company,**

      **Defendants.**                   **JURY TRIAL DEMANDED**

### BRIEF IN SUPPORT OF DEFENDANT PREMIER POWERSPORTS RENTAL, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COMES NOW, Defendant, Premier Powersports Rental, LLC ("Premier"), by and through its undersigned counsel pursuant to Federal Rules of Civil Procedure 4(m), 12(b)(2), and 12(b)(3) and respectfully submits this Memorandum of Law in Support of Premier's Motion to Dismiss Plaintiff's Complaint on the following grounds: (1) this Court lacks personal jurisdiction over Premier and (2) this Court is the improper venue for this action.

### I.    Background

This is a case in which Plaintiff, Christine O'Keefe, individually and as Administrator of the Estate of Cynthia Fischer (the "Decedent"), deceased ("Plaintiff"), is alleging a negligence, wrongful death, and product liability action arising from a fatal All-Terrain Vehicle ("ATV") rollover that took place on April 25, 2021 along the Hatfield-McCoy Trail System, located in southwestern West Virginia.  Compl. ¶ 15.

Premier has no connection to Pennsylvania. *See* Affidavit of William Ossie Lucas, attached at Exhibit 1. Premier is a Kentucky limited liability company that rents ATVs and Side-by-Sides for use in the Kentucky, West Virginia, and Ohio Tri-State area. Ex. 1. Premier has never done business in Pennsylvania and is not licensed to do so. *Id*. Premier is a Kentucky entity, licensed in Kentucky, with its principal place of business in Kentucky, and operating in Kentucky. *Id*. Premier has not been registered, authorized, or licensed to do business in Pennsylvania; has not maintained an office, place of business, post office box, or telephone listing in Pennsylvania; has not had real estate, bank accounts, or other property interests in Pennsylvania; has not conducted any regular or ongoing advertising, solicitation, marketing, or other sales promotions directed toward residents of Pennsylvania; and has not had a registered agent for service of process in Pennsylvania. *Id*.

Plaintiff filed the instant Complaint against Premier and Defendant, Rustic Ravines, LLC ("Rustic Ravines"), on August 15, 2022, in the Western District of Pennsylvania. Plaintiff alleges that Premier and Rustic Ravines "knowingly and recklessly chose not to provide full-face helmets to Rustic Ravines' guests, despite having the opportunity to do so" and that neither Premier nor Rustic Ravines "provided any training or warning to Decedent and her boyfriend about their helmets, how to operate the ATVs, or about the rules, conditions, and dangers of the Hatfield-McCoy Trails Systems." Compl. ¶¶ 24 and 26. Plaintiff alleges claims of negligence, wrongful death, intention spoliation, and product liability which she asserts resulted in the death of the Decedent against Premier and Rustic Ravines. *See* Compl. Counts I-XII. Plaintiff also alleges a claim of negligent misrepresentation against Rustic Ravines. Compl. Count XIII.

Plaintiff alleges that venue is proper in this Judicial District because "Defendants continuously and systematically targeted advertisements in the form of social media posts and

interstate billboards of its resort and ATV rental services to southwestern and western Pennsylvania" and that "these activities give rise to the instant matter." Compl. ¶ 13-14. Premier has never engaged in any advertising campaign targeted to southwestern and western Pennsylvania, nor does it utilize any interstate billboards to advertise its ATV rental services. Further, to the contrary, the events alleged in the Complaint occurred in West Virginia, not Pennsylvania. *See generally* Compl.

Pursuant to the Order of this Court (Doc. 5), on November 2, 2022, the parties met and conferred regarding whether the identified pleading deficiencies may properly be cured by amendment. *See* Certificate of Premier, attached as Exhibit 2. The meet and confer was unsuccessful. Premier now timely moves to dismiss the Complaint for lack of jurisdiction and improper venue.[1]

II.     **Argument**

A.     DISMISSAL FOR LACK OF JURISDICTION

If a defendant contests a court's personal jurisdiction, the plaintiff must establish "that the cause of action arose from the defendant's forum related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction). *Mellon Bank (East) PSFS, N.A. v. Di Veronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993); *see also Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993); *Romah v. Scully*, No. 06-698, 2007 WL 3493943, *3 (W.D. Pa., Nov. 13, 2007). "The burden of establishing the requisite jurisdictional facts rests on the plaintiff as the party alleging their existence. *Lucas v. Gulf W Indus., Inc.*, 666 F.2d 800, 805 (3d Cir. 1981).

---

[1] Pursuant to the Joint Stipulation for Entry of Order Extending Time for Defendants Rustic Ravines, LL and Premier Powersports Rental, LLC to File Responsive Pleadings in Response to Plaintiff's Complaint (Doc. 8) that was filed on October 13, 2022, and approved by the Court on October 14, 2022 (Doc. 9), Premier's deadline to respond to the Complaint was extended to November 18, 2022.

A plaintiff cannot merely rely upon the allegations in its complaint to satisfy its burden, but rather, the plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984) (the exercise of personal jurisdiction is "inherently a matter which requires resolution of factual issues outside the pleadings."); *see also IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998); *Nat'l Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.*, 785 F. Supp. 1186, 1189 (W.D. Pa. 1992). More specifically, the plaintiff must offer evidence that establishes with reasonable particularity the existence of sufficient contacts between the defendant and the forum state to support jurisdiction. *See Carteret Savings Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992), *cert. denied*, 506 U.S. 817 (1992); *Provident Nat'l Bank v. California Fed. Sav. Loan, Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). Because a Federal Rule of Civil Procedure 12(b)(2) motion requires resolution of factual issues outside the pleadings, a court may consider "all undisputed evidence submitted by the parties." *Oeschle v. Pro-Tech Power, Inc.*, No. 03-CV-6875, 2006 WL 680908, *3 (E.D. Pa. Mar. 15, 2006).

Plaintiff has not met her burden to establish that Premier has contacts with Pennsylvania that are constitutionally sufficient for jurisdictional purposes. In fact, Premier has no such contacts. As no personal jurisdiction exists over Premier, all claims against Premier should be dismissed.

> i.    *Premier does not have minimum contacts with Pennsylvania.*

Premier does not the required minimum contacts for this Court to confer personal jurisdiction over it. In diversity cases, a federal court may exercise personal jurisdiction over a nonresident defendant to the extent permitted under the law of the state in which it sits. Fed. R.

Civ. P. 4(e); *Provident Nat'l Bank*, 819 F.2d at 436; *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952

F. Supp. 1119, 1122 (W.D. Pa. 1997). In the U.S. Court of Appeals for the Third Circuit:

> [T]o exercise personal jurisdiction over a defendant, a federal court . . . must
> undertake a two-step inquiry. First, the court must apply the relevant state . . .
> statute to see if it permits the exercise of personal jurisdiction; then, the court must
> apply the precepts of the Due Process Clause of the Constitution.

*IMO Indus., Inc.*, 155 F.3d at 258-59. Thus, under governing Pennsylvania law, a court may only

exercise in personam jurisdiction over a nonresident defendant when (i) jurisdiction is conferred

by Pennsylvania's Long Arm Statute, and (ii) the exercise of jurisdiction under the Long Arm

Statute does not violate the Due Process Clause. *See, e.g.*, *Kubik v. Letteri*, 614 A.2d 1110, 1112

(Pa. 1992).

The reach of Pennsylvania's Long-Arm Statute is "coextensive" with the Due Process

Clause. *North Penn Gas Co. v. Corning Natural Gas, Corp.*, 897 F.2d 687, 690 (3d Cir. 1990),

*cert. denied*, 498 U.S. 847 (1990); *see also* 42 Pa. C.S.A. § 5322. The Due Process Clause permits

a court to exercise personal jurisdiction over a nonresident defendant who has "certain minimum

contacts with [the forum state] such that the maintenance of [a] suit does not offend traditional

notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945). Thus, this Court must look to the federal constitutional doctrines to determine Premier's

susceptibility to personal jurisdiction in Pennsylvania. *Vetrotex Certainteed Corp. v. Consolidated

Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).

The due process limits on the reach of personal jurisdiction are defined by a two prong test.

*Pennzoil Prods Co. v. Colelli & Assocs. Inc.*, 149 F.3d 197, 201 (3d Cir. 1998); *Vetrotex*, 75 F.3d

at 150-51. First, a plaintiff must demonstrate that the defendant has constitutionally sufficient

"minimum contacts" with the forum. *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 474 (1985).

To determine whether minimum contacts exists, the court must examine "the relationship among

the forum, the defendant and the litigation" to determine whether the defendant has "purposefully directed" its activities toward residents of the forum. *Burger King Corp.*, 471 U.S. at 472. This purposeful availment requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of "random, fortuitous, or attenuated" contacts. *Zippo*, 952 F. Supp. at 1123 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Second, if the plaintiff demonstrates sufficient minimum contacts, the court must determine whether the exercise of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316; *Grand Entertainment Group, Ltd.*, 988 F.2d at 481.

> When determining the reasonableness of a particular forum, the court must consider the burden on the defendant in light of other factors, including: the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's right to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies.

*Zippo*, 952 F. Supp. at 1123 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)); *see also Burger King Corp.*, 471 U.S. at 477.

Personal jurisdiction may be either general or specific. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). Courts typically first examine whether there is specific jurisdiction, i.e., whether the cause of action arises from the defendant's forum-related activity. *North Penn Gas Co.*, 897 F.2d at 690. If, on the other hand, the claim is unrelated to a defendant's activities in the forum state, the defendant's contacts with the forum state must be continuous and systematic in order to establish general jurisdiction. *See, e.g., Dollar Savings Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 211-14 (3d Cir. 1984); *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir. 1982). To establish general jurisdiction, a plaintiff must show significantly more than minimum contacts with the forum state. *Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Instead, a much higher threshold showing is required and the showing must be "extensive and pervasive." *Componentone, LLC v. Componentart, Inc.*, No. 02:05cv1122, 2007 WL 776930, *2 (W.D. Pa., Mar. 12, 2007) (citing *Reliance Steel Prods. Co.*, 675 F.2d at 589).

ii.      *Premier is not subject to specific jurisdiction in Pennsylvania.*

This Court lacks specific jurisdiction over Premier. Specific jurisdiction applies only when the events giving rise to the cause of action are related to or arise out of the defendant's forum-related activities. *Vetrotex*, 75 F.3d at 151; *Helicopteros*, 466 U.S. at 414 n. 8. A defendant must have "purposefully directed his activities at residents of the forum" and the litigation must have resulted from "injuries that arise out of or relate to those activities." *BP Chem., Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King Corp.*, 471 U.S. at 472).

To determine whether a court has specific jurisdiction over a party usually involves a three-part inquiry. First, the court must determine whether the defendant has "purposefully directed" its activity at the forum; second, the court must determine whether the plaintiff's claim arises out of or relates to at least one of those specific activities; and, finally, assuming that the first two requirements have been met, the court must consider the principles of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 1998); *Nationwide Contractor Audit Serv., Inc. v. Nat'l Compliance Mgmt. Serv., Inc.*, No. 08-08, 2008 WL 2390376, *4 (W.D. Pa. June 10, 2008).

Plaintiff has not alleged, and/or supported, any direct act by Premier which occurred in Pennsylvania and which gave rise to her alleged causes of action. Instead, Plaintiff has only alleged through inaccurate and purely speculative allegations, that Premier "continuously and

7

systematically targeted advertisements in the form of social media posts and interstate billboards of [Defendants'] resort and ATV rental services to southwestern and western Pennsylvania." Compl. ¶ 13.

Plaintiff's assertion that Premier can be hauled into Pennsylvania by "continuously and systematically" targeting advertisements in the form of social media posts and interstate billboards to southwestern and western Pennsylvania is flawed. The decision of the United States Supreme Court in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 137 S. Ct. 1773 (U.S. 2017) addresses such an assertion.

*Bristol-Myers Squibb Co.* involved a California lawsuit brought by a group of plaintiffs alleging they were injured by Plavix, a drug manufactured by pharmaceutical giant Bristol-Myers Squibb Co. ("BMS"). *Bristol-Myers Squibb Co.*, 137 S. Ct. 1773, 1777. Some of the plaintiffs had purchased Plavix from BMS's distribution chain in California, but others were nonresidents who received the drug outside of California. *Id.* at 1778. The Supreme Court held that California courts could not exercise specific personal jurisdiction over the product liability and misleading advertising claims filed by the nonresident plaintiffs. The Court reached that conclusion even though BMS has five California "research and laboratory facilities, which employ around 160 employees," and also "employs about 250 sales representatives in California and maintains a small state-government advocacy office in Sacramento." *Id.* Additionally, BMS' marketing for Plavix was "national in scope." *Id.* at 1784 (Sotomayor, J., dissenting). It "conducted a single nationwide advertising campaign for Plavix, using television, magazine, and Internet ads to broadcast its message." *Id.* BMS also "sold almost 187 million Plavix pills in the State and took in more than $900 million from those sales." *Id.* at 1778. BMS had even contracted with a California company

to distribute Plavix nationwide. *Id.* at 1783. The Court held those contacts were all irrelevant to specific personal jurisdiction.[2]

*Bristol-Myers Squibb Co.* makes it clear that advertising is "national in scope," without a clear marketing strategy for a specific forum, will not establish specific jurisdiction. Premier's website and Facebook page, attached as Exhibits 3 and 4, in no way indicate that Premier is targeting advertisements at southwestern and western Pennsylvania, or anywhere in Pennsylvania. *See* Exhibits 3 & 4. These allegedly targeted advertisements are insufficient to confer jurisdiction on Premier. *See generally Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 137 S. Ct. 1773 (U.S. 2017). Here, Premier does not employ targeted advertising to anywhere in Pennsylvania, including the jurisdiction of this Court in southwestern and western Pennsylvania. *See* Ex. 1 at ¶ 13.

---

[2]   "For specific jurisdiction," the Court explained, "a defendant's general connections with a forum are not enough." *Id.* at 1781. Instead, what is needed "is a connection between the forum and the specific claims at issue." *Id.* Despite all of BMS's other contacts with the state, "BMS did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package or work on the regulatory approval of the product in California." *Id.* at 1778; *see id.* at 1781. Further, the "mere fact that *other* plaintiffs" obtained the same product in California and sustained the same injuries as the nonresidents "does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781. That is, the Supreme Court made clear that the specific jurisdiction analysis focuses on the specific claims at issue and, in particular, where the defendant sold the specific product that harmed the specific plaintiff, even if the defendant sold identical products to other consumers in the forum state.

Finally, the Court noted that although the plaintiffs at issue were "not California residents and do not claim to have suffered harm in that State," there would have been no specific jurisdiction even if the plaintiffs had suffered injury in California. That is because the Court had already held in *Walden* that "Nevada courts lacked specific jurisdiction even though the plaintiffs [in that case] were Nevada residents and suffered foreseeable harm in Nevada." *Id.* The Court reached that conclusion in *Walden* because the Nevada plaintiffs complained they were injured by actions that the defendant had taken in Georgia—because all of the "*relevant* conduct occurred entirely in" Georgia, "the mere fact that [this] conduct affected plaintiffs with connections to the forum State d[id] not suffice to authorize jurisdiction." *Id.* at 1781-82 (quoting *Walden*, 134 S. Ct. 1115, 1126 (U.S. 2014)). Thus, although the nonresident plaintiffs' claim to specific jurisdiction in *Bristol-Myers Squibb Co.* was "even weaker" than that of the plaintiffs in *Walden*, the Court was clear that the important fact in both cases was not where the plaintiff was injured, but rather that all of the *defendant's* "conduct giving rise to the nonresident's claims occurred elsewhere." *Id.* at 1782.

*Bristol-Myers Squibb Co.* is directly applicable here because all of the conduct allegedly giving rise to Plaintiff's allegations occurred outside of Pennsylvania—Premier is a Kentucky entity, licensed in Kentucky, with its principal place of business in Kentucky, and operating in Kentucky, and the decedent's accident occurred outside of Pennsylvania, in West Virginia. The mere fact that the decedent had connections to Pennsylvania is insufficient to confer jurisdiction.

Additionally, the advertisements cited by Plaintiff in her Complaint have nothing to do with "the specific claims at issue" in this case, and they are therefore irrelevant under *Bristol-Myers Squibb Co.*. *Id.* at 1781; *see also id.* at 1780 ("the suit must arise out of or relate to the defendant's contacts with the forum" (quotations and alterations omitted)).  Plaintiff's claims are based on allegations that Premier's negligence resulted in the death of the decedent, but there is no connection between Premier's website, Plaintiff's claims, or Pennsylvania.

*iii.*      *Premier is not subject to general jurisdiction in Pennsylvania.*

This Court also lacks general jurisdiction over Premier.  To assert general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts." *Provident Nat'l Bank*, 819 F.2d at 437.  Indeed, the plaintiff must demonstrate that the defendant's contacts with the forum state are continuous and systematic. *Gehling v. St. George's Sch. of Med.*, 773 F.2d 539, 541 (3d Cir. 1985); *Zippo*, 952 F. Supp. at 1122.  The threshold for establishing general jurisdiction is very high and requires a showing of "extensive and pervasive" facts demonstrating connections with the forum state. *Reliance Steel Prods.*, 675 F.2d at 589.

To determine whether to exercise general jurisdiction over a corporation, federal courts in Pennsylvania have utilized various criteria, including (1) whether the defendant is incorporated or licensed to do business in Pennsylvania; (2) whether the defendant has consented to jurisdiction; (3) whether the defendant files any tax returns within Pennsylvania; (4) whether the defendant files administrative reports with any agency or department of Pennsylvania; (5) whether the defendant regularly purchases products or supplies within Pennsylvania; (6) whether the defendant owns land or property within the state; (7) whether the defendant advertises in Pennsylvania; and (8) whether the defendant maintains an agent in Pennsylvania. *Nationwide Contractor Audit Serv., Inc.*, 2008 WL 2390376, *6 (quoting 42 PA. Cons. Stat. Ann. § 5301(a)(2)); *Wims v. Beach Terrace Motor*

10

*Inn, Inc.*, 759 F. Supp. 264, 269 (E.D. Pa. 1991).  Whether a defendant's contacts are sufficiently continuous and systematic to support general jurisdiction must be decided on a case-by-case basis. *Gavigan v. Walt Disney World Co.*, 630 F. Supp. 148, 151 (E.D. Pa. 1986).  Here, based on these considerations, just as specific jurisdiction is lacking over Premier, so too is general jurisdiction lacking over Premier.

Indeed, the absence of personal jurisdiction over Premier is very apparent as applied to the "extensive and pervasive" requirement of general jurisdiction.  Premier does not have continuous and systematic contacts with Pennsylvania as required to establish general jurisdiction.  In fact, Premier has no direct contacts with Pennsylvania.  Premier is not incorporated or registered to do business in Pennsylvania, does not conduct business in Pennsylvania, does not file tax returns in Pennsylvania, has no employees in Pennsylvania, owns no property in Pennsylvania, does not maintain an agent for service of process in Pennsylvania, and has no office or bank account in Pennsylvania. Ex. 1.  Accordingly, this absence of any contacts with the forum state precludes the exercise of general personal jurisdiction over Premier.

B.     DISMISSAL FOR IMPROPER VENUE

The Western District of Pennsylvania is not the proper venue for this action with respect to Premier.  The federal venue statute, 28 U.S.C. § 1391(b) provides:

> A civil action may be brought in – (1) a judicial district in which any defendant resides, if all the defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction in respect to such action.

28 U.S.C. § 1391(b).  28 U.S.C. § 1391(d) provides:

> For purposes of venue under this chapter in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.
> 28 U.S.C. § 1391(d).

Here, Plaintiff has failed to plead facts establishing that Premier is subject to venue in this District.  Moreover, as discussed above, it would be improper for the Court to exercise either specific or general personal jurisdiction over Premier in this case.  Where venue is not established, the district court should dismiss the case.  28 U.S.C. § 1406(a).  To establish venue under 28 U.S.C. § 1391(b)(1), a plaintiff must show that the defendant corporation is subject to personal jurisdiction in this Court at the time the action is commenced.  28 U.S.C. § 1391(b) and (d).  For venue under 28 U.S.C. § 1391(b)(2), the plaintiff may rely on the entire sequence of events underlying the claim so long as the corporate defendant is subject to the personal jurisdiction of the court.  *Farkas v. Rich Coast Corp.*, No. 2:13-cv-00926-LPL, 2014 WL 550594, at *11 (W.D. Pa. Feb. 11, 2014) ("to determine whether venue is proper . . . Section 1391(d) . . . require[s] that personal jurisdiction exists").  In order to establish venue under § 1391(b)(3), Plaintiff must show that: (1) there is no district in which an action may otherwise be brought, and (2) that Premier is subject to the Court's personal jurisdiction.  Typically, for a corporation sued in a district where it does not have an office, this "require[s]  that it be present in the district by its officers and agents carrying on the business of the corporation, this being the only way in which it could be said to be found within

the district." *Eastman Kodak Co. of N.Y. v. Southern Photo Materials Co.*, 273 U.S. 359, 371 (1927).

As stated above, Plaintiff cannot establish that this Court has personal jurisdiction over Premier. Plaintiff also has also failed to establish any basis for venue in the Western District of Pennsylvania against Premier. Plaintiff has not made any assertions against Premier that any of its acts or omissions took place in Pennsylvania or that it resided here. Plaintiff's assertion that Premier targeted advertisements to southwestern and western Pennsylvania are false and, notwithstanding, insufficient to confer jurisdiction on Premier. Premier has not been registered, authorized, or licensed to do business in Pennsylvania; has not maintained an office, place of business, post office box, or telephone listing in Pennsylvania; has not had real estate, bank accounts, or other property interests in Pennsylvania; and has not had a registered agent for service of process in Pennsylvania. *See* Ex. 1. Premier is not a resident of Pennsylvania and no substantial portion of the events giving rise to Plaintiff's claim occurred at a time Premier was subject to personal jurisdiction in Pennsylvania. *See id.* Therefore, venue is improper and the Court should dismiss this action.

### III.   Conclusion

It is clear that none of the elements for general or specific jurisdiction can be established in this action. Premier is not "at home" in Pennsylvania and this case does not arise out of any contacts between Premier and this forum. None of the allegations in Plaintiff's Complaint explain how this Court could exercise jurisdiction over Premier. As such, the Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction.

In addition, Premier is not subject to venue in this District. Thus, the Court should dismiss Plaintiff's Complaint for improper venue.

WHEREFORE, Defendant, Premier Powersports Rental, LLC, respectfully request that this Court dismiss Plaintiff's Complaint, with prejudice, along with any other relief the Court may deem just and proper.

Respectfully Submitted,

PREMIER POWERSPORTS RENTAL, LLC,

By Counsel,

Robert C. James, Esq. (PA# 80393)
FLAHERTY SENSABAUGH BONASSO PLLC
1225 Market Street
P.O. Box 6545
Wheeling, WV 26003
T: (304) 230-6600
F: (304) 230-6610
rjames@flahertylegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE O'KEEFE,
Individually and as Administrator of the
ESTATE OF CYNTHIA FISCHER, deceased,

        Plaintiff

                            Civil Action No. 2:22-cv-1178
v.                         (The Honorable Judge Arthur J. Schwab)

RUSTIC RAVINES, LLC, a West Virginia
Limited liability company; PREMIER
POWERSPORTS RENTAL, LLC, a Kentucky
Limited liability company,

        Defendants.

## CERTIFICATE OF SERVICE

I, Robert C. James, Esquire, do hereby certify that on this 17th day of November, 2022, the

foregoing **"BRIEF IN SUPPORT OF DEFENDANT PREMIER POWERSPORTS RENTAL,**

**LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT"** has been electronically filed using

the CM/ECF System, thereby electronically serving the following counsel of record:

Michael P. O'Day, Esquire
221 Commercial Ave., Suite 200
Aspinwall, PA  15215
*Counsel for Plaintiff*

Robert C. James, Esq. (PA # 80393)
FLAHERTY SENSABAUGH BONASSO PLLC